**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| HERMAN K. ALLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:11-CV-2224-JAR |
| | ) |
| STATE OF MISSOURI, d/b/a | ) |
| DEPARTMENT OF SOCIAL SERVICES | ) |
| DIVISION OF YOUTH SERVICES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on cross motions for summary judgment.  [ECF Nos. 50,

58] The motions are fully briefed and ready for disposition.

I.      **Factual Background**[1]

---

[1] The facts are taken from Defendant's Statement of Uncontroverted Material Facts (Doc.
No. 51-1) and Plaintiff's Statement of Undisputed Facts. (Doc. No. 59) Both parties filed
statements of uncontroverted material facts in support of their motions. Defendant filed its
response to Plaintiff's Statement of Undisputed Facts (Doc. No. 63-1); however, Plaintiff failed
to file a response to Defendant's Statement of Uncontroverted Material Facts. Local Rule
4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a
> statement of uncontroverted material facts, set forth in a separately numbered paragraph
> for each fact, indicating whether each fact is established by the record, and, if so, the
> appropriate citations. Every memorandum in opposition shall include a statement of
> material facts as to which the party contends a genuine dispute exists. Those matters in
> dispute shall be set forth with specific references to portions of the record, where
> available, upon which the opposing party relies. The opposing party also shall note for all
> disputed facts the paragraph number from movant's listing of facts. All matters set forth
> in the statement of the movant shall be deemed admitted for purposes of summary
> judgment unless specifically controverted by the opposing party.

Plaintiff Herman Allen ("Allen") began working for the Department of Social Services ("DSS"), Division of Youth Services ("DYS") (also referred to as "Defendant") as a Youth Specialist II on July 23, 2005. Allen was assigned to the Twin Rivers facility in North St. Louis County. As a Youth Specialist, Allen was responsible for monitoring the performance of approximately 12 youths at the Twin Rivers facility, taking them to any appointments off grounds, being involved in recreation and other activities, and helping to keep order in the facility. In November 2006, Allen became a Youth Group Leader, with responsibility for supervising 5-8 Youth Specialists at the Twin Rivers facility, running group meetings, and generally acting as mid-manager of the facility.

On August 19, 2008, Allen became the Youth Facility Manager II at Babler Lodge, located in Babler State Park, with responsibility for directing and managing the facility, from both a fiscal and treatment standpoint. Allen oversaw approximately 27 staff members and 20 youths at Babler. As the Youth Facility Manager, Allen was expected to plan, implement, supervise, and evaluate the details of group treatment programs and the provisions of individualized services for the youths, as well as provide training to his staff. He was also expected to meet with local officials, public and private agency heads, community groups, and the general public to explain the facility's functions, programs and role in the community, and to

---

E.D. Mo. L.R. 4.01(E). As a result of Plaintiff's failure to submit any response, Plaintiff has not met the requirements of Local Rule 4.01(E), and is deemed to have admitted all facts in Defendant's statement of uncontroverted facts. Turner v. Shinseki, 2010 WL 2555114, at *2 (E.D.Mo. June 22, 2010) (citing Deichmann v. Boeing Co., 36 F.Supp.2d 1166, 1168 (E.D.Mo.1999), aff'd, 232 F.3d 907 (8th Cir.2000), cert. denied, 531 U.S. 877, 121 S.Ct. 184, 148 L.Ed.2d 127)). However, Plaintiff's failure to respond properly to the motion for summary judgment does not mean that summary judgment should be automatically granted in favor of Defendant. Even if the facts as alleged by Defendant are not in dispute, those facts still must establish that it is entitled to judgment as a matter of law. Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 191 (Mo.Ct.App. 2010) (citations omitted). See also Vandergrift v. Emerson, 2012 WL 15021, at *1 (W.D. Mo. Jan. 4, 2012)

solicit community support. Elaine Barbee ("Barbee"), Assistant Regional Administrator, was Allen's immediate supervisor.

When he began working at Babler Lodge, Allen was placed on a nine-month probationary status, as were all of Defendant's employees when they begin working or start a new position. On May 15, 2009, Judy Parrett, Human Resources Manager for DYS, extended Allen's probationary period for another three months, until August 18, 2009, because he needed to make improvements in his work and additional time was needed to assess his performance. During this extended probationary period, Allen was expected to improve in his leadership of employees and relationships with parents and community resources. He was also expected to increase his knowledge of assessing the maturity levels of the youth group and staff, and make appropriate interventions to effectively provide leadership to the facility.

In addition to the extended probationary period, Barbee placed Allen on a three-month Employee Action Plan, from May 19, 2009 to August 19, 2009, to identify areas for improvement, set goals for obtaining those improvements, and more accurately evaluate his performance.

On or about July 31, 2009, DYS staff members reported Allen for inappropriate work conduct and behavior with staff and youth. On August 14, 2009, Barbee and her supervisor, Lew Mueller, met with Allen to discuss the allegations against him and offered him the option of resigning, but he declined. Allen was placed on administrative leave with pay while DYS conducted an investigation. Allen's placement on administrative leave with pay was not considered a disciplinary action, and he continued to receive his full pay and benefits and accrue time for purposes of calculating leave, tenure, and retirement.

On August 26, 2009, Allen requested and was granted FMLA leave, which he took for

the fully allotted 12 weeks. On October 5, 2009, while on FMLA leave, Allen filed a grievance review request alleging he had been sexually harassed by Barbee and subjected to inconsistent policy and procedures. On October 20, 2009, Allen's grievance was forwarded to the DSS Office for Civil Rights for investigation. On March 2, 2010, the Office for Civil Rights completed its investigation into Allen's grievance review request and concluded there was no evidence to support his allegations of sexual harassment and racial discrimination.

DSS has a sexual harassment policy that outlines the conduct that constitutes sexual harassment, sets forth the responsibilities for reporting by employees, the responsibilities of supervisors and managers to provide a harassment free workplace, and the process used to investigate reports of harassment. Pursuant to DSS' sexual harassment policy, employees who believe they have been subjected to sexual harassment or have witnessed sexual harassment have the responsibility to immediately report the incident. Employees may report the harassment by (1) completing a Grievance Review Request form and submitting it to the DSS Personnel and Labor Relations Section within 30 days of the incident; or (2) reporting the incident verbally or in writing to the employee's immediate supervisor, a higher level of management or supervision, the divisional personnel officer, or DSS Personnel and Labor Relations Section.

Allen read DSS' sexual harassment policy when he began working at DYS. He also signed an acknowledgment stating that he received, read, and understood the policies in the DSS Employee Handbook, which included the sexual harassment policy. As a manager, Allen was responsible for discussing the policy with his subordinates. He also underwent training on Civil Rights and Diversity geared for supervisors.

After Allen exhausted his FMLA leave on November 18, 2009, he was returned to administrative leave with pay. On December 2, 2009, Regional Administrator Don Pokorny

presented Allen with nine Employee Incident Reports outlining each act of misconduct and the impact of each violation. DYS' investigation into Allen's misconduct revealed that he violated DYS rules, policies, and procedures by: relying on his subordinates for transportation to and from work for a six-month period of time, misusing the state car, displaying inappropriate and unprofessional behavior and poor role modeling, failing to follow policies and procedures regarding safety and security and youth supervision and treatment; and failing to adhere to DYS Beliefs and Philosophies. DYS determined that this misconduct was cause for termination as set forth in Rule 1 CSR 20-3.070(2) of the Rules of the Personnel Advisory Board and Personnel Division.[2]

On January 11, 2010, Allen filed a dual charge of discrimination with the EEOC and the MCHR, Charge No. 846-2009-59848, alleging that he, an African-American male, was subjected to discrimination based on race and sex from September 15, 2008 to September 10, 2009. In Charge No. 846-2009-59848, Allen alleged that his supervisor, Elaine Barbee, sexually harassed him by subjecting him to daily phone calls and frequent hugs. He also alleged that he was placed on an extended probation and suspension for no apparent reason.

On April 9, 2010, Allen was notified via letter that he was being dismissed from his employment with DYS effective April 21, 2010 due to misconduct and violations of

---

[2] DYS determined that Allen's conduct amounted to violations of the following departmental and divisional policies: Department of Social Services Administrative Policy 2-101 (Sexual Harassment/Inappropriate Conduct); Department of Social Services Administrative Policy 2-109 (Internal Investigations); Department of Social Services Administrative Policy 2-115 (Work Rules); Department of Social Services Administrative Policy 2-120 (Code of Conduct); Department of Social Services Administrative Policy 2-124 (Discipline); Department of Social Services Administrative Policy 2-500 (Conflict of Interest); Division of Youth Services Administrative Policy 3.18 (Training); Division of Youth Services Administrative Policy 3.8 (Employee Conduct); Division of Youth Services Administrative Policy 9.6 (Program Supervision); Division of Youth Services Administrative Policy 10.5 (Day Hiking, Base Camping and Backpacking).

departmental and divisional policies. Allen remained on administrative leave with pay until his termination.

On November 8, 2011, the MCHR issued Allen a Notice of Right to Sue letter with regard to Charge No. 846-2009-59848.

On December 20, 2011, Allen filed a second dual charge of discrimination with the EEOC and MCHR, Charge No. 560-2012-00543, alleging discrimination based on race, sex, and retaliation from December 15, 2008 to April 21, 2010. Allen alleged that he complained about sexual harassment on September 15, 2009 to Human Resources and was terminated by his employer on April 21, 2010. He further alleged that he believed his suspension and termination were in retaliation for participating in protecting activity. On March 19, 2012, the MCHR issued Allen a Notice of Right to Sue letter with regard to Charge No. 560-2012-00543.

On December 21, 2011, Plaintiff filed this action for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C, §§ 2000e, et seq. In his pro se complaint, Plaintiff alleges he was discriminated against by Defendant on the basis of gender, race and retaliation beginning in late summer 2008 through his last day of employment on or about April 21, 2010. (Amended Complaint, ECF No. 5, ¶ 3).

## II.    <u>Legal Standard</u>

Summary judgment is appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law.  See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  The initial burden is placed on the moving party.  <u>City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.</u>, 838 F.2d 268, 273 (8th Cir. 1988).  If the record demonstrates that no genuine issue of fact is in dispute, the burden then shifts to the non-moving party, who must set forth affirmative evidence and specific facts showing a genuine dispute on

that issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether summary judgment is appropriate in a particular case, the evidence must be viewed in the light most favorable to the nonmoving party. Osborn v. E.F. Hutton & Co., Inc., 853 F.2d 616, 619 (8th Cir. 1988).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law.  Husinga v. Federal-Mogul Ignition Co., 519 F.Supp.2d 929, 942 (S.D. Iowa 2007).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Township Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). In determining the appropriateness of summary judgment, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir.1993) (citing Anderson, 477 U.S. at 251-52).

### III.   Discussion

### A.  Exhaustion of Administrative Remedies

Defendant argues Allen failed to properly exhaust his administrative remedies prior to filing his action. Before filing a federal employment action in district court, a claimant must comply with certain notice and exhaustion requirements. Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). "Exhaustion of administrative remedies is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate  discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory

efforts." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir.1994) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 180–81, (1989)).

To exhaust administrative remedies, a Title VII plaintiff must: (1) file a charge of discrimination with the EEOC within 300 days of the allegedly discriminatory occurrence setting forth the facts and nature of the charge, and (2) receive notice of the right to sue. 42 U.S.C. § 2000e–5(b), (c), (e). Brooks v. Midwest Heart Group, 655 F.3d 796, 800 (8th Cir. 2011). See also Stuart v. Saint-Gobain Containers, Inc., 2011WL 6304067, at *2-3 (E.D. Mo. Dec. 16, 2011). After exhausting his administrative remedies, a plaintiff has ninety days from receipt of the right to sue letter to file a civil action in federal court. 42 U.S.C. § 2000e-5(f). Jones v. Walker, 2011 WL 1114427, at *1 (E.D. Mo. March 28, 2011). Failure to exhaust Title VII's administrative remedies bars the plaintiff from filing a civil lawsuit. Williams, 21 F.3d at 222.

Allen filed a dual charge of discrimination with the EEOC and MCHR on January 11, 2010, alleging discrimination based on race and sex occurring from September 15, 2008 to September 10, 2009.  (Doc. No. 51-8, p. 5) The MCHR issued Allen a right to sue letter on November 8, 2011, and this action was filed on December 21, 2011. (Id., p. 2) Defendant contends that Allen's action is time barred under the Missouri Human Rights Act, Mo. Rev. Stat. §213.111.1 (2000),[3] because it was not filed within two years of the last act of discrimination referenced in the charge, i.e., September 10, 2009. (Doc. No. 51, pp. 9-10) Because Allen brings this action for employment discrimination pursuant to Title VII only, and does not assert a claim for violation of the Missouri Human Rights Act, Defendant's argument with respect to Charge No. 846-2009-59848 is without merit.

---

[3] The Missouri Human Rights Act requires any action to be filed within ninety days from the date of the right to sue letter, but no later than two years "after the alleged cause occurred or its reasonable discovery by the alleged injured party." Mo. Rev. St. § 213.111.1.

On December 20, 2011, the day before filing the instant action, Allen filed a second dual charge of discrimination with the EEOC and MCHR, alleging discrimination based on race, sex and retaliation occurring from December 15, 2008 to April 21, 2010, when he was terminated. (Doc. No. 51-8, p. 14) Defendant contends that Allen was required to file his charge by February 15, 2011, 300 days from his April 21, 2010 termination. Because he did not file his charge of retaliation until December 20, 2011, 609 days after his employment was terminated, Allen's Title VII claim for retaliation is time barred and subject to dismissal for failure to timely exhaust his administrative remedies. (Doc. No. 51, pp. 10-11)

In response, Allen relies on the Court's June 13, 2012 order denying Defendants' motion to dismiss for failure to exhaust administrative remedies. (Doc. No. 57, p. 2) However, the Court's denial of Defendant's motion to dismiss is not dispositive of the argument raised in Defendant's motion for summary judgment. On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Noel v. AT & T Corp., 2013 WL 1283844, at *2 (E.D.Mo. Mar. 27, 2013) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Fed.R.Civ.P. 8(a)(2)). In its June 13 Order, the Court found Allen had raised a factual issue regarding the timeliness of his complaint. (Doc. No. 27) A claim may not be dismissed under Rule 12(b)(6) or Rule 56 where questions of material fact exist as to the timeliness of the complainant's efforts to exhaust it. Brooks, 655 F.3d at 800 (citing Jensen v. Henderson, 315 F.3d 854, 859 (8th Cir. 2002); Laouini v. CLM Freight Lines, Inc., 586 F.3d 473, 475–76 (7th Cir. 2009)). This matter is now before the Court on cross-motions for summary judgment.  As discussed above, summary

judgment is only appropriate when no genuine issue of material fact exists in the case and the movant is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

Allen has not presented any evidence of a factual dispute as to whether Charge No. 560-2012-00543 was timely filed. Allen was required to file his charge by February 15, 2011, 300 days from his April 21, 2010 termination. 42 U.S.C. § 2000e–5(e). He filed his charge on December 20, 2011, 609 days following his termination. Thus, the Court concludes that Allen's Title VII claim for retaliation is time barred. Even if Allen's retaliation claim is not time-barred, it would still fail, as discussed below, Sec. III. C.

**B.  Sexual harassment**

"Title VII prohibits employers from discriminating based on sex with respect to compensation, terms, conditions, or privileges of employment." Jenkins v. Winter, 540 F.3d 742, 748 (8th Cir. 2008); 42 U.S.C. § 2000e-2(a). "Discrimination based on sex that creates a hostile or abusive working environment violates Title VII." Jenkins, 540 F.3d at 748. A hostile work environment arises when sexual misconduct has the purpose or effect of unreasonably interfering with a person's job performance or creating "an intimidating, hostile, or offensive work environment." Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65-66 (1986) (quoting 29 C.F.R. 1604.11(a)(3)).

To state a prima facie case of hostile work environment based on sexual harassment by a supervisor, Allen must prove that: (1) he is a member of a protected group, (2) he was subjected to unwelcome sexual harassment, (3) the harassment was based on sex, and (4) the harassment affected a term, condition, or privilege of his employment.  LeGrand v. Area Resources for Community and Human Services, 394 F.3d 1098, 1101 (8th Cir. 2005). See also, Jenkins, 540

F.3d at 748-49. Defendant argues that Allen has failed to prove he was subjected to unwelcome harassment or that the harassment was sufficiently severe or pervasive. (Doc. No. 51, pp. 11-15)

### Unwelcome harassment

Harassing conduct is considered unwelcome if it was "uninvited and offensive." Meritor, 477 U.S. at 57; Burns v. McGregor Electronic Industries, Inc., 989 F.2d 959, 962 (8th Cir. 1993). The Court views the harassment from the victim's perspective. Burns, 989 F.2d at 965. "The proper inquiry is whether the plaintiff indicated by his conduct that the alleged harassment was unwelcome." Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1377-78 (8th Cir.1996) (quoting Meritor, 477 U.S. at 68).

In his amended complaint, Allen alleges his supervisor, Elaine Barbee, subjected him to "daily phone calls," "unwanted hugs," and "superficial comments, such as 'you always smell good and dress so neatly.' " (Complaint, Doc. No. 5, ¶ 8(b)) Allen testified that he was directed to call Barbee on a daily basis, but he could not articulate anything about the content of the calls that was sexual in nature. In fact, he testified that Barbee did not make any sexual comments during the phone calls. (Deposition of Herman K. Allen ("Allen Dep."), Doc. 51-2, 129:8-10; 132:20-133:18) Allen concedes that the content of the phone calls related to work and events occurring at Babler Lodge and that he would ask Barbee for her help and advice during these calls when he needed it. (Id., 131:15-132:7) Nevertheless, Allen believes it was the overabundance of the phone calls that made them sexually harassing. (Id., 132:8-20) Other than an alleged statement that he smelled good and "was always neat," Allen could not identify any other specific remarks by Barbee during the phone calls. (Id., 134:14-25; 135:1-4; 136:14-16) He testified it was not the specific statements made by Barbee, but rather the "subliminal message" that was sexually harassing. (Id., 133:14-22; 134:14-23) Allen complained about having to check

in with Barbee by phone daily because his previous supervisor did not have such a requirement. (Id., 135:2-24) On occasion, Barbee called him at home or on his cell phone. These calls did not relate to work. Instead, Barbee called to wish him a Merry Christmas and the like. (Id., 127:25-129:10) Allen stated that nothing Barbee said during these calls was sexual in any way. (Id., 129:8-10)

According to Allen, Barbee would hug him anytime she saw him in a "greeting kind of fashion." (Id., 125:18-126:2) In his grievance review request filed in October 2009, Allen stated Barbee hugged him on at least seven or eight occasions throughout his employment. (Doc. No. 51-20, p. 18) He found the hugs offensive because Barbee did not greet others in the agency in this manner. (Id., 124:10-17; 125:13-17) Allen also stated his previous supervisor did not hug him. (Id., 135:2-24)

A plaintiff must indicate by his conduct that the alleged harassment was unwelcome. Meritor, 477 U.S. at 68. Here, Allen's conduct and testimony demonstrate that he did not find the alleged harassment unwelcome. With few exceptions, he was the one initiating the phone calls to Barbee. A plaintiff cannot create a genuine issue of material fact with regard to unwelcome behavior when he engages in the conduct complained about. See Scusa v. Nestle U.S.A. Co., Inc., 181 F.3d 958, 966 (8th Cir. 1999); Hocevar v. Purdue Frederick Co., 223 F.3d 721, 737-38 (8th Cir. 2000). At most, Elaine's required daily phone calls amounted to an annoyance that does not fall within the protections of Title VII. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." Duncan v. General Motors Corp., 300 F.3d 928, 934 (8th Cir. 2002) (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 81 (1998).

- 12 -

Moreover, Allen never told Barbee he was uncomfortable with her hugs or daily phone calls and never complained to any of her superiors about her conduct. (Allen Dep., 127:7-9; 127:20-22; 136:17-19; 137:8-18) In fact, it was Allen's testimony that "I know how to handle myself," and "I am pretty experienced." (Id., 129:10-12) Further, despite his awareness of Defendant's sexual harassment policy and reporting requirements, Allen did not follow department policy and report the alleged sexual harassment until October 5, 2009, over a month after being notified that he was being investigated for misconduct and placed on administrative leave with pay. (Doc. Nos. 51-7, p. 12; Doc. 51-10; Allen Dep., 137:19-23; 138:4-15; 140:19-22; 141:9-12;142:5-12) A plaintiff's failure to complain about the alleged sexual harassment despite his awareness of the employer's sexual harassment policy and reporting requirements demonstrates the plaintiff did not consider the conduct to be unwelcome. See Pimentel v. St. Louis Public Schools, 2011 WL 128788, at *12 (E.D. Mo. Jan. 14, 2011). For these reasons, the Court finds and concludes that Allen has failed to establish that he was subjected to "uninvited and offensive" conduct.

**Severe or pervasive**

Even if Allen could establish unwelcome sexual harassment, Defendant argues that Allen cannot prove the harassment was sufficiently severe or pervasive to affect a term, condition or privilege of his employment. (Doc. No. 51, pp. 13-15) In response to Defendant's motion, and in support of his motion, Allen complains about Barbee's management style. He contends that requiring him to call her every day over a period of 9-10 months was "pervasive" and "creates hostility." (Doc. No. 57, pp. 4) He also states "it was well known throughout the agency that [Barbee] liked [him]. (Id., p. 5) Allen complains of fraternization between subordinate employees in DYS and states that his advancement within the agency in a shorter timeframe than

other employees demonstrates his ability and competence. (Id., pp. 6-8) In reply, Defendant states that Allen's allegation that "it was well known throughout the agency that the Defendant liked [him]" is unsupported by the record and that even when viewing this allegation in the light most favorable to Allen, it does not demonstrate that Barbee sexually harassed him. Similarly, Allen's generalized grievances about Barbee's management style, other employees not advancing within the agency, and fraternization between subordinate employees are not supported by the record and are not sufficient to demonstrate a severe and pervasive work environment. (Doc. No. 69, pp. 10-11)

To be considered sufficiently severe or pervasive, the conduct complained of must create an environment that a reasonable person would find hostile or abusive. Duncan, 300 F.3d at 934. To be actionable, conduct must be both subjectively and objectively offensive, as well as "extreme in nature and not merely rude or unpleasant." Southerland v. Mo. Department of Corrections, 580 F.3d 748, 751 (8th Cir. 2009) (citations omitted). To determine whether a work environment is hostile and abusive, the Court examines the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or mere offensive utterance, and whether it unreasonably interferes with an employee's job performance. Cross v. Prairie Meadows Racetrack & Casino, Inc., 615 F.3d 977, 981 (8th Cir. 2010). See also Baker v. John Morrell & Co., 382 F.3d 816, 828 (8th Cir. 2004).

"Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Vajdl v. Mesabi Academy of

- 14 -

Kidspeace, Inc., 484 F.3d 546, 550 (8th Cir. 2007) (citations omitted). The Eighth Circuit has found summary judgment proper in numerous cases due to the plaintiff's failure to show the harassing conduct was "sufficiently severe or pervasive so as to alter the conditions of employment." See, e.g., Duncan, 300 F.3d 928 (proposition for "relationship," touching of plaintiff's hand, and creation of "Man Hater's Club" poster not actionable); Tuggle v. Mangan, 348 F.3d 714, 722 (8th Cir. 2003) (comments based on plaintiff's sex and the posting of a photograph of plaintiff's "clothed rear end" is not actionable); Ottman v. City of Independence, 341 F.3d 751, 760 (8th Cir. 2003) (belittling and sexist remarks on almost a daily basis are not actionable conduct); Meriwether v. Caraustar Packaging Co., 326 F.3d 990, 993 (8th Cir. 2003) (grabbing plaintiff's buttock and confronting her about it the following day did not rise to actionable conduct); Alagna v. Smithville R-II Sch. Dist., 324 F.3d 975, 977-78 (8th Cir.2003) (a co-worker that called plaintiff's home, frequently visited her office, talked about his relationships with women, touched plaintiff's arm, placed romance novels in plaintiff's work mailbox, invaded plaintiff's personal space, and told plaintiff that he loved her was found to be inappropriate, but the conduct was not sufficiently severe or pervasive).

Viewing Allen's claim in light of these standards, the Court finds there is insufficient evidence to demonstrate that Barbee's alleged conduct affected a term, condition or privilege of his employment. See, LeGrand v. Area Resources for Community and Human Servs., 394 F.3d 1098, 1101-02 (8th Cir. 2005) ("to be actionable the conduct must be extreme and not merely rude or unpleasant").  Allen objected to Barbee's requirement that he call her on a daily basis, but conceded that the calls related to work. In fact, Allen admitted Barbee was able to offer him advice and help during some of the phone calls. Allen was unable to articulate anything about the content of the calls that was sexual in nature. Allen found Barbee's hugs offensive, yet this

conduct was not frequent (only seven to eight incidents over the course of his employment), or physically violent or threating, and did not unreasonably interfere with Allen's work performance. In addition, Allen chose not to report the conduct about which he now complains. This is strong evidence that these incidents did not subjectively affect the conditions of his employment. As such, Barbee's alleged conduct does not "rise[] to the level of actionable hostile work environment sexual harassment." See LeGrand, 394 F.3d at 1102.

C. **Retaliation**

As discussed above, the Court finds Allen's Title VII claim based on retaliation time barred for failure to exhaust administrative remedies. Even if his claim is not time barred, however, it would still fail.

To prevail on a retaliation claim, Allen must demonstrate that: 1) he was engaged in a protected activity; 2) suffered an adverse employment action; and 3) the adverse action occurred because he was engaged in the protected activity. 42 U. S .C. § 2000e-3(a). See also Wilkie v. Department of Health and Human Services, 638 F.3d 944, 955 (8th Cir. 2011) (citing Devin v. Schwan's Home Serv., Inc., 491 F.3d 778, 785 (8th Cir.2007)). A "protected activity" can be either opposing an act of discrimination made unlawful by Title VII, or making a charge, testifying, assisting, or participating in an investigation under Title VII. See Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 684 (8th Cir. 2012).

Defendant does not dispute that Allen's filing of the grievance with the DSS Office of Civil Rights on October 5, 2009 was a protected activity. Nor does Defendant dispute that Allen's termination on April 21, 2010 was an adverse employment action. However, Defendant contends that Allen cannot prove a causal connection between the two events sufficient to establish that the termination was in retaliation for his filing of the grievance. (Doc. No. 51, p.16)

- 16 -

First, Defendant notes that a period of six months passed between the filing of Allen's grievance on October 5, 2009 and his termination on April 21, 2010. (Id., p. 18) This, Defendant maintains, is not sufficient "temporal proximity" to permit an inference of causal connection. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Sisk v. Picture People, Inc., 669 F.3d 896, 900 (8th Cir. 2012) (quoting Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.1999). In order for temporal proximity alone to be sufficient, "the temporal proximity must be very close." Sisk, 669 F.3d at 900-01 (quoting Hite v. Vermeer Mfg. Co., 446 F.3d 858, 866 (8th Cir.2006)). Although the Eighth Circuit has not set out a definitive time frame, it has held that two months is too long to support a finding of causation without something more. Id. In Smith v. Fairview Ridges Hosp., 625 F.3d 1076, 1088 (8th Cir.2010), the Court found one month is not close enough. See also, Wisbey v. City of Lincoln, 612 F.3d 667, 676 (8th Cir.2010) (same); Littleton v. Pilot Travel Centers, LLC, 568 F.3d 641, 645 (8th Cir. 2009) (a seven month gap is not sufficiently contemporaneous to satisfy the causation element of retaliation claim)). Second, Defendant argues the fact that it notified Allen of the allegations made against him and was already in the process of investigating him for misconduct prior to his filing of the grievance contradicts any inference of a causal connection. (Doc. No. 51, p. 18) Because Allen fails to provide any other evidence linking his termination to his filing of a grievance, a reasonable jury would not have a legally sufficient evidentiary basis to find for him on that issue.

Defendant further argues it had a legitimate nondiscriminatory basis for terminating Allen. (Id., p. 19) Specifically, Allen was not meeting Defendant's legitimate expectations prior to his termination, and was being investigated for allegations of inappropriate work conduct and

behavior with staff and youth and violations of departmental and divisional policies. (Doc. No. 51, pp. 19-22)

As evidence of retaliation, Allen argues that the Division of Employment Security Appeals Tribunal's decision to award him unemployment benefits vindicated him of the charge of employee misconduct and that Defendant's failure to appeal this decision indicates Defendant agrees with the decision. (Doc. No. 57, pp. 9-10) Next, Allen alleges that Barbee was keeping him under surveillance and monitoring his daily activities and was unhappy with the number of African-American employees he hired. (Id., p. 11) Allen also claims he was the only one of three employees disciplined for purchasing Christmas gifts for department secretaries (with department funds). (Id., pp. 11-12) Allen cites the Court to several circuit court decisions defining "adverse employment action" to include negative performance evaluation and co-worker harassment. See, e.g., Mattern v. Eastman Kodak Co., 104 F.3d 702, 708 (5th Cir. 1997), abrogated on other grounds by Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 60 (2006); Wyatt v. City of Boston, 35 F.3d 13, 15-16 (1st Cir. 1994); and Gunnell v. Utah Valley State College, 152 F.3d 1253 (10th Cir. 1998). (Doc. No. 57, pp. 10-11) Because the Eighth Circuit has held that only "ultimate employment decisions" such as hiring, discharging, promoting and compensating, constitute "adverse employment actions," Jones v. Fitzgerald, 285 F.3d 705 (8th Cir. 2002); Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997); Harlston v. McDonnell Douglas Corp., 37 F.3d 379 (8th Cir. 1994), Allen's reliance on these cases is misplaced.

Defendant replies that the Appeals Tribunal's decision regarding unemployment benefits is irrelevant to the issue of retaliation because the standard for awarding unemployment benefits is different than that required to prove a claim of retaliation under Title VII and does not signify

- 18 -

that his termination was unjustified. (Doc. No. 63, p. 9) In further reply, Defendant states that Allen's allegations regarding surveillance and the like are unsupported by the record and insufficient to demonstrate the requisite causation element of a retaliation claim. Finally, Defendant maintains it has demonstrated a legitimate nondiscriminatory basis for terminating Allen, which has been discussed in detail above. (Doc. No. 51, pp. 19-22; Doc. Nos. 51-6, 51-7).

Once a defendant provides a legitimate nondiscriminatory reason for plaintiff's termination, the plaintiff bears the burden of proving that the "proffered reason was merely a pretext for discrimination." Davis v. Jefferson Hosp. Ass'n, 685 F.3d 675, 684 (8th Cir. 2012). Because Allen has failed to present any evidence in the record demonstrating pretext, his claim for retaliation will be dismissed.

### D. Racial discrimination

In order to prove a prima facie case for race based discrimination, plaintiff must demonstrate that: "(1) he is a member of a protected class; (2) he met the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." Philip v. Ford Motor Co., 413 F.3d 766, 768 (8th Cir. 2005). The plaintiff bears the burden of establishing "specific, tangible evidence that employees who were similarly situated in all respects to him received different treatment from" the employer. Id. If the plaintiff can do so, the burden then shifts to the employer to establish a legitimate, non-discriminatory reason for the adverse employment action. Id.

Defendant does not dispute that Allen is a member of a protected class as an African-American and that he suffered an adverse employment action when he was terminated on April 21, 2010. However, Defendant contends that Allen cannot demonstrate that he met the legitimate

expectations of Defendant, or that similarly situated employees that were not members of the protected class were treated differently. (Doc. No. 51, p. 23)

It is undisputed that Allen was placed on an Employee Action Plan to identify areas of improvement, set goals, and permit DYS to more accurately evaluate his performance. His probationary status was also extended for three months to give him time to make improvements in his work performance.  There is also no dispute that in July 2009, DYS staff members reported Allen for misconduct and violations of various departmental and divisional policies. Following an investigation, DYS determined Allen's misconduct was cause for termination.[4] Consequently, Allen was not meeting the legitimate expectations of his employer prior to his termination.

Defendant further argues Allen cannot prove that similarly situated employees that were not members of his protected class were treated differently. (Doc. No. 51, p. 25) Allen has the burden of demonstrating there were individuals similarly situated in all relevant aspects to him by a preponderance of the evidence. Clark v. Runyon, 218 F.3d 915, 918 (8th Cir.2000). The individuals used for comparison must have dealt with the same supervisor, have been subject to the same standard, and engaged in the same conduct without any mitigating or distinguishing

---

[4] DYS concluded that, through his misconduct, Allen demonstrated that he: (B) is incompetent, inadequate, careless or inefficient in the performance of the duties of his position and failed to meet the established minimum standards in the performance of those duties; (C) has been wantonly careless or negligent in the care of the property of the state; (H) has been guilty of scandalous and disgraceful conduct while on or off duty where this conduct tends to bring the state service into public disrepute or has exhibited behavior which adversely affects the employee's job performance, the employing agency, or both; (I) has been guilty of abusive or improper treatment of guests or clients while on duty at any state facility or on any land normally opened to the public; (K) has been guilty of insubordination or has failed to respond in a reasonable manner to his lawful orders or instructions of persons with duly delegated authority over the employee; and (L) has violated the lawful regulations or policies of the agency by which employed after having been made aware of the regulations and policies.

circumstances. Id. (citing Lynn v. Deaconess Med. Ctr.-W. Campus, 160 F.3d 484, 487-88 (8th Cir. 1998). Permanent employees are not similarly situated to probationary employees. Mercer v. City of Cedar Rapids, 308 F.3d 840, 844 (8th Cir. 2002).

In his amended complaint, Allen alleges the rules were not uniformly applied to him and that Defendant did not discipline other similarly situated employees in the same ways. (Amended Complaint, Doc. No. 5, ¶ 8(j), (l)) Allen does not, however, identify a single employee who is similarly situated to him, nor does he substantiate his allegations with evidence that would permit the Court to find in his favor.

Even if Allen can establish a prima facie case of discrimination based on race, Defendant argues it had a legitimate non-discriminatory reason for terminating Allen, namely for misconduct and violations of departmental and divisional policies as discussed above. (Id., p. 26)

Allen has not responded to Defendant's motion with respect to these claims.[5] Therefore, the Court finds Plaintiff has abandoned these claims. See Semi-Materials Co., Ltd. v MEMC Electronic Materials, Inc., 2011 WL 134078, at *4 (Jan. 10, 2011) (court construed plaintiff's failure to respond to argument raised in motion to exclude as abandonment of intent to introduce opinion). See also Culkin v. Walgreen Co., 2006 WL 839195, at *1 (E.D.Mo. Mar. 27, 2006) (court assumed plaintiff abandoned claims not addressed in opposition to defendant's motion to dismiss); United States v. NHC Health Care Corp., 163 F.Supp.2d 1051, 1058-59 (W.D.Mo.2001) (court assumed plaintiff abandoned claims not addressed in opposition to defendant's motion for summary judgment). Even if Plaintiff's claims were not abandoned,

---

[5] On pages 13-14 of his Response to Defendant's Motion for Summary Judgment, Allen repeatedly cites to Defendant's exhibits 556-589. These documents are not attached to Defendant's Memorandum in Support of Summary Judgment, nor are they attached to Allen's Response. Therefore, the statements on pages 13-14 of the Response are only allegations and are not supported by the record.

however, they would fail on the merits, as discussed above.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [50] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [58] is **DENIED**.

An appropriate Judgment will accompany this Memorandum and Order.


**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of May, 2013.